UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JEFFREY R. BRANDENBURG,            )
                                   )
              Plaintiff,           )
                                   )
       v.                          )   CASE NO. 1:04-cv-1376-DFH-WTL
                                   )
JO ANNE B. BARNHART,               )
Commissioner of the Social         )
Security Administration,           )
                                   )
              Defendant.           )


ENTRY ON JUDICIAL REVIEW


Plaintiff Jeffrey Brandenburg seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits.  Acting for the Commissioner, Administrative Law Judge ("ALJ") Paul R. Armstrong determined that Mr. Brandenburg was not disabled under the Social Security Act because he retained the residual functional capacity to perform a significant range of sedentary work.  Mr. Brandenburg contends the ALJ erred by rendering an incomplete residual functional capacity assessment, by failing to evaluate the credibility of his wife's testimony, and by issuing a conclusory credibility finding.  As explained below, the ALJ's decision is affirmed because it complies with the law and is supported by substantial evidence.


*Background*

Jeffrey Brandenburg was born February 10, 1972.  R. 55.  He was 30 years old on the alleged disability onset date of April 19, 2002, and was 32 years old at the time of his hearing before the ALJ.  R. 16.  Mr. Brandenburg is 6 feet, 4 inches tall and weighed between 335 and 350 pounds at the time of his hearing.  R. 19. Mr. Brandenburg received a B.S. from Western Michigan University, R. 309, and trained for the 1996 Olympic Trials in the shot put event.  R. 306, 310.  Mr. Brandenburg has worked as a monument maker, farm hand, baker, track coach, production manager, and sales representative.  R. 73.  Mr. Brandenburg's last employment was with Hertz, where he originally worked in sales and then took a desk position after he underwent a right knee arthrodesis, an operation that immobilized his knee.  R. 307-08.  He stopped working at Hertz in April 2002 and has not worked since.  *Id.*

1.    *Knee Pain*

Mr. Brandenburg played several sports during his teenage years, including football, wrestling, basketball, and shot put.  R. 151, 175.  His knee problems began early, including a diagnosis of Osgood-Schlatter's disease in both knees at the age of ten, R. 175; resection of a swollen mass of the right knee at age twelve, R. 163; a ligament sprain of the right knee at age fourteen, R. 220; and arthroscopy of the right knee at age fifteen, R. 216.

Mr. Brandenburg's knee problems continued into adulthood. On December 1, 1995, at the age of 23, Mr. Brandenburg underwent an arthroscopy on his right knee. R. 176. An evaluation at Indiana University Hospital on April 14, 2000, revealed post-traumatic arthritis in both knees. R. 152. On April 27, 2000, an MRI of his right knee revealed extensive arthritis, as well as evidence of "at least two intra-articular loose bodies." R. 150. On June 14, 2000, Mr. Brandenburg underwent a right knee arthroscopy, which resulted in a postoperative diagnosis of "intra-articular loose body plus a small tear of the anterior central portion of the lateral meniscus." R. 159. After discussing several options with Dr. David Heck, Mr. Brandenburg ultimately decided to proceed with a right knee arthrodesis to effectively immobilize his right leg at the knee, which Dr. Heck performed on September 20, 2000. R. 155.[1]

During a follow-up visit on November 30, 2000, Dr. Heck noted that since the arthrodesis, Mr. Brandenburg had essentially no pain, except at the end of a 10 to 15 hour day. R. 142. During another follow-up visit on January 11, 2001, Dr. Heck noted that Mr. Brandenburg continued to do very well, could stand four to five hours before needing to sit down, and was not taking any medications for his arthritis. R. 141. Dr. Heck also noted that Mr. Brandenburg's left knee symptoms were minimal at the time. *Id.*

---

[1]Mr. Brandenburg had already had twelve surgeries on his knees. R. 155.

-3-

On September 6, 2001, Dr. Heck noted that Mr. Brandenburg had been experiencing increased intermittent difficulties with his left knee, and wrote, "The patient's left knee currently has crepitation at the patellofemoral articulation." R. 140. Dr. Heck also noted that Mr. Brandenburg tended to use a cane, especially when walking outside. *Id.*

On August 29, 2002, Dr. Henderson noted that Mr. Brandenburg occasionally used a cane. R. 132. On May 19, 2003, Dr. Patrick Kirk noted that Mr. Brandenburg walked with a cane at all times. R. 230. On June 3, 2003, Mr. Brandenburg reported no pain in his knees and was able to heel-and-toe walk satisfactorily. R. 181. On the same date, Mr. Brandenburg indicated he required a cane or crutches for walking. R. 185.

2.    *Back Pain*

On January 11, 2001, Dr. Heck noted that Mr. Brandenburg's lower back symptoms were minimal. R. 141. On May 28, 2003, Dr. Rick Sasso at the Indiana Spine Group reported that Mr. Brandenburg had a 3-year history of significant back pain, describing it as "incapacitating back pain that has not resolved despite nonoperative treatment." R. 188. On June 3, 2003, Mr. Brandenburg reported that his back pain had increased since his right knee arthrodesis, that the pain kept him from sitting more than 20 minutes, and that he could not stand for more than an hour before the pain increased. R. 185. On

June 10, 2003, Dr. Dan Nordmann at the Indiana Spine Group reported that Mr. Brandenburg's back pain had worsened over the last several months.  An MRI revealed disc degeneration and spondylosis at L4-5 and L5-S1.  R. 178.  Mr. Brandenburg then received "bilateral L4-5 and L5-S1 facet joint injections."  *Id.*  Fifteen minutes after the procedure, Mr. Brandenburg experienced a 90% reduction in pain relief.  R. 179.

On September 12, 2003, Dr. Nordmann reported that Mr. Brandenburg obtained relief for about a week after the injections, but then the pain became unbearable again.  R. 198.  Dr. Nordmann wrote:  "It is limiting his lifestyle and making it difficult for him to work . . . "  *Id.*  At that time, Mr. Brandenburg underwent a bilateral 4-5, 5-1 facet rhizotomy.  *Id.*

A list of Mr. Brandenburg's medications on October 9, 2003, showed that he took on average two doses of Norco 10 per day for pain and 10 milligrams of Flexeril twice daily as a muscle relaxer, as well as Ibuprofen and Tylenol.  R. 161.  Mr. Brandenburg testified at his hearing that if he did some light housework, he would be "out" for two and a half days thereafter due to the pain.  R. 309.

3.    *Obesity*

The medical records show that Mr. Brandenburg has a significant history of obesity.  On August 29, 2002, Dr. Henderson described Mr. Brandenburg as

"morbidly obese."  R. 132.  The records indicate that Mr. Brandenburg's weight fluctuated between 315 pounds and 350 pounds from 2000 through 2003.  R. 124-25, 144, 188, 233, 246.

    4.    *Procedural History*

Mr. Brandenburg applied for disability insurance benefits on August 1, 2002.  R. 16.  His claim was denied initially and on reconsideration.  Upon his request, a hearing was held before Administrative Law Judge Paul R. Armstrong on December 9, 2003.  *Id.*  Christopher Stack, M.D., testified as a medical expert, and Gail Ditmore, C.R.C., testified as a vocational expert.  *Id.*

ALJ Armstrong issued a decision on February 27, 2004, finding Mr. Brandenburg not disabled.  R. 20-22.  Mr. Brandenburg then filed a request for review, which the Appeals Council denied on July 9, 2004.  R. 6.  The ALJ's decision is treated as the final decision of the Commissioner.  *Smith v. Apfel,* 231 F.3d 433, 437 (7th Cir. 2000); *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994).  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).

*Statutory Framework for Determining Disability*

To be eligible for the disability insurance benefits he seeks, Mr. Brandenburg must establish that he was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental

impairment that could be expected to result in death or that had lasted or could be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d). This showing would be presumed if Mr. Brandenburg's impairments met or medically equaled any impairment listed in Part 404, Subpart P, Appendix 1 of the implementing regulations, and if the duration requirement were met. 20 C.F.R. § 404.1520(d). Otherwise, Mr. Brandenburg can establish disability only if his impairments were of such severity that he was unable to perform not only the work he had previously done but also any other kind of substantial work existing in the national economy. 20 C.F.R. § 404.1520(f) and (g).

This eligibility standard is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). The Act provides important assistance for some of the most disadvantaged members of American society. But before tax dollars – including tax dollars paid by others who work despite serious and painful impairments – are available as disability benefits, it must be clear that a claimant has an impairment severe enough to prevent him from performing virtually any kind of work. Under the statutory standard, these benefits are available only as a matter of nearly last resort.

The implementing regulations for the Act provide the familiar five-step process to evaluate disability. See 20 C.F.R. § 404.1520(a)(4). The steps are as follows:

(1)    Is the claimant engaged in substantial gainful activity?  If so, he is not disabled.

(2)    If not, does the claimant have a severe impairment or combination of impairments?  If not, he is not disabled.

(3)    If so, does the impairment meet or equal an impairment listed in the regulations?  If so, the claimant is disabled.

(4)    If not, can the claimant do his past relevant work?  If so, he is not disabled.

(5)    If not, can the claimant perform other work in the national economy given his residual functional capacity, age, education, and experience?  If not, he is disabled.

When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

The ALJ found that Mr. Brandenburg satisfied step one because he had not engaged in any substantial gainful activity since the alleged onset of disability. At step two, the ALJ found that Mr. Brandenburg's fused right knee, arthritis in the left knee, degenerative disc disease, and obesity constituted severe impairments within the meaning of the regulations.  At step three, the ALJ found that Mr. Brandenburg's impairments did not meet or equal any of the listed impairments in the regulations.   At step four, the ALJ found that Mr. Brandenburg was unable to perform any of his past relevant work.  At step five, the ALJ found that Mr. Brandenburg had a residual functional capacity to perform a significant range of sedentary work.

*Standard of Review*

If the Commissioner's decision is supported by substantial evidence, it must be upheld by a reviewing court.  42 U.S.C. § 405(g); *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995), quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's judgment by reweighing the evidence, resolving material conflicts, or reconsidering the facts or the credibility of the witnesses.  *Cannon v. Apfel*, 213 F.3d 970, 974 (7th Cir. 2000); *Luna*, 22 F.3d at 689.  The court must examine the evidence that favors the claimant as well as the evidence that supports the Commissioner's conclusion.  *Zurawski*, 245 F.3d at 888.  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of the conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).  A reversal and remand may be required, however, if the ALJ committed an error of law, *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997), or if the ALJ based the decision on serious factual mistakes or omissions.  *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

*Discussion*

-9-

Mr. Brandenburg advances the following arguments:  (1) in determining residual functional capacity, the ALJ excluded important limitations and evidence; (2) the ALJ failed to evaluate the credibility of Mrs. Brandenburg; and (3) the ALJ failed to explain his credibility determination as to Mr. Brandenburg's own statements.

I.      *Residual Functional Capacity Assessment*

Mr. Brandenburg argues that the ALJ overestimated his residual functional capacity because the ALJ:  (a) failed to take into account the limitations presented by his pain, and (b) failed to include limitations to bending, stooping, kneeling, or crawling.  The court disagrees.  The ALJ's residual functional capacity assessment concluded that Mr. Brandenburg retained

> the residual functional capacity to perform sedentary exertional work with the following restrictions and limitations:  the ability to sit or stand at his option to relieve discomfort; no climbing ladders, ropes or scaffolds; no work at unprotected heights, work around dangerous moving machinery, open flames or bodies of water; no work requiring exposure to extremes of temperature and humidity; and must have room to accommodate unbent right leg.

R. 18.

The ALJ is not required to provide an in-depth analysis of every piece of evidence the claimant provides.  *Diaz v. Chater*, 55 F.3d, 300, 307 (7th Cir. 1995); *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988).  The question is whether the trier of fact builds an adequate and logical bridge between the evidence and

the result.  *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000).  "An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required."  *Diaz*, 55 F.3d at 307, citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

The ALJ addressed all of the identified sources of Mr. Brandenburg's pain: knee pain; back pain, including efforts to relieve the pain; neck pain; and pain medication.  R. 18.  The ALJ incorporated Mr. Brandenburg's pain into the residual functional capacity assessment by requiring that Mr. Brandenburg have the opportunity to sit and stand at his option to relieve discomfort.  *Id*.  Contrary to Mr. Brandenburg's argument, the ALJ did take into account the limitations that Mr. Brandenburg's pain imposed upon him.  By evaluating and discussing the evidence pertaining to pain, the ALJ built an adequate and logical bridge between the evidence and his conclusion, and did not ignore the line of evidence pertaining to pain.

The ALJ also adequately addressed the physical limitations imposed upon Mr. Brandenburg.  In the residual functional capacity assessment, in addition to imposing several restrictions such as no climbing ladders and no work around dangerous machinery, the ALJ required that Mr. Brandenburg have room to keep his right leg straight.  R. 18.  Furthermore, the ALJ noted:

> The claimant is able to maintain personal hygiene and grooming,
> cook, clean, do laundry, perform minor automotive repairs, drive,

shop, read, watch television, fish, attend graduate level classes, and
visit with friends and relatives (EX 1E at 13-14, EX 1F at 31-32).

*Id.*  Although the ALJ did not specifically cite bending, crawling, kneeling, or
stooping as physical limitations, the ALJ addressed Mr. Brandenburg's need to
keep his right leg straight.  R. 18.  Furthermore, the classification of sedentary
work does not require an individual to stoop, crawl, kneel, or bend.  20 C.F.R.
§ 404.1567(a).  Contrary to Mr. Brandenburg's argument, the ALJ evaluated and
discussed the activities that Mr. Brandenburg could and could not do.  By doing
so, the ALJ built an adequate and logical bridge between the evidence and his
conclusion, and did not ignore the line of evidence pertaining to physical
limitations.

II.    *Mrs. Brandenburg's Testimony*

Mr. Brandenburg contends that the ALJ erred by failing to make a
credibility finding as to his wife's testimony.  This argument is without merit.
Social Security Rule 96-7p governs the determination of the credibility of the
*claimant's* statements, SSR 96-7p, n.1 (emphasis added).  The ALJ will consider
statements by other individuals, but only to the extent that the person's
statements are consistent with the objective medical evidence.  20 C.F.R.
§ 404.1529(a).

In *Carlson v. Shalala*, the Seventh Circuit dismissed the plaintiff's claim that the ALJ failed to consider his wife's testimony because the ALJ addressed all relevant lines of evidence, rendering his wife's testimony redundant. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993).  The Seventh Circuit explained:

> The ALJ explicitly addressed Carlson's testimony concerning his pain and daily activities.  Mrs. Carlson's testimony was essentially redundant.  This is not like other cases where, because the ALJ failed to consider an entire line of evidence, we concluded that he provided insufficient reasons.

*Id.*

The ALJ discussed all relevant lines of evidence.  Mrs. Brandenburg's testimony focused on her husband's limitations and pain with respect to household chores and activities, R. 316; his need to keep his right leg elevated, R. 328; and his efforts to reduce his weight by dieting, R. 313.  Because her testimony was essentially parallel to her husband's, the ALJ did not err by failing to mention her testimony specifically.

III.    *Credibility Determination*

Ordinarily, a reviewing court defers to an ALJ's credibility determination. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).  The general rule is that absent legal error, an ALJ's credibility determination will not be disturbed unless "patently wrong."  *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000); *Diaz*, 55 F.3d at 308.

Mr. Brandenburg argues that the ALJ failed to explain his credibility determination.   The ALJ must adequately articulate the reasons behind a credibility finding.  *Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003); SSR 96-7p.  An ALJ is obligated by SSR 96-7p to go beyond a conclusory statement that a claimant's allegations are not credible.  See *Brindisi*, 315 F.3d at 787-88 (holding that the ALJ's credibility determination was deficient because the ALJ dismissed the claimant's description of his limitations in a single sentence); *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002) (concluding the same for a similar one-sentence credibility finding).  The ALJ stated:

> I have carefully considered the credibility of his subjective complaints as required by the regulations and the rulings (20 C.F.R. § 404.1529(c)(3) and Social Security Ruling 96-7p).  The claimant's subjective complaints and allegations concerning the severity of his impairments are not reasonably consistent with the objective medical and other evidence of record.

R. 18.  The ALJ then explained his finding in detail.  The ALJ described the inconsistencies he saw in Mr. Brandenburg's statements throughout the record:

> While the claimant has reported using his cane at all times (EX O), at other time[s] he is only using it occasionally.  (EX 1f at 32).  Further, the claimant reported right knee pain in October 2003 (EX R at 4).  However, there was no pain in that knee as of June 2003 (EX G at 4).  The claimant reports incapacitating back pain without significant radiation to the lower extremities (EX G at 11) . . . He also had facet joint injections and facet rhizotomies with good relief.  (EX G at 1-2; EX I at 1-2, 4-5; EX R at 4).  However, while the claimant has used Mobic, Norco and Flexeril at times (EX G at 4, 11, 18; EX P at 1, 3-6; EX R at 5), other times he takes only over-the-counter medication (EX 1F at 32; EX R at 5) or no medication at all (EX 1F at 29).  Nevertheless, the claimant is able to maintain personal hygiene and grooming, cook, clean, do laundry, perform minor automotive repairs,

drive, shop, read, watch television, fish, attend graduate level classes, and visit with friends and relatives (EX 1E at 13-14; EX 1F at 28, 31-32).

R. 18.

The ALJ described the inconsistencies he found in the record.  He did not merely issue a conclusory statement.  Inconsistencies with the record are a valid basis on which to discount a claimant's credibility.  *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).  The ALJ adequately articulated the reasons behind his credibility finding.

An unusual exchange occurred between the ALJ and the claimant during the hearing.  The ALJ openly discussed the reasons for denying disability benefits to Mr. Brandenburg, a highly motivated individual with a strong work record and significant education and work skills.  The ALJ explained that Mr. Brandenburg was in better shape and more skilled than almost all applicants applying for Social Security disability benefits.  The ALJ explained that Mr. Brandenburg would have to adjust and learn to work with and through his pain.  During this frank exchange, the ALJ simply elaborated on his reasons for denying disability benefits.  The court sees nothing improper at all in the ALJ's oral preview of his final reasoning.

*Conclusion*

The ALJ in this case found that Mr. Brandenburg did not establish disability under the law.   Because the ALJ's decision was consistent with the law and supported by substantial evidence, the court affirms the Commissioner's decision. The court will enter final judgment accordingly.


So ordered.

Date: August 2, 2005

_David F. Hamilton_
_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana


Copies to:

James F. Roth
jim@jimrothlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov